**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **TINA LOUISE MURRAY,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil No. SAG-26-02125** |
| **DISTRICT COURT FOR ANNE ARUNDEL COUNTY,** | * | |
| **Defendant.** | * | |

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiff Tina Louise Murray ("Plaintiff"), who is self-represented, filed this action against her former employer, the District Court for Anne Arundel County ("Defendant"). ECF 1.[1] Two motions are presently pending: Plaintiff has filed a Motion for Appointment of Counsel, ECF 3, and Defendant has filed a Motion to Dismiss or, in the alternative, for Summary Judgment, ECF 16. Plaintiff submitted two filings in opposition to Defendant's motion, ECF 22,[2] 25, and Defendant filed a reply, ECF 26. This Court has reviewed all of the filings and no hearing is

[1] Plaintiff filed two sets of documentary exhibits as "supplements" to her complaint. ECF 7-1, 13-1. As discussed herein, this Court will treat Defendant's motion as a motion to dismiss and therefore has not considered the supplemental exhibits, which were filed well after the Complaint itself. The Complaint refers to two documents as "attached" or "enclosed," ECF 1-2 at 7, but neither was actually attached and neither appears to be contained in the two supplements Plaintiff filed.

[2] The first of Plaintiff's two opposition filings consists entirely of new factual recitation and is entitled, in relevant part, "Statement of the Facts in Response to Defendant's Motion." ECF 22. However, this Court cannot consider any facts alleged in motions briefing that were not contained in the Complaint itself. *See Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (explaining that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd,* 141 F.3d 1162 (4th Cir. 1998).

necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons that follow, Plaintiff's motion will be denied and Defendant's motion, treated as a motion to dismiss, will be granted.

## I. FACTUAL BACKGROUND

The following facts relevant to this motion are derived from the Complaint, ECF 1, and the EEOC filings attached thereto, ECF 1-2, and are assumed to be true for the purposes of adjudicating this motion. Plaintiff is an African American female who has been "baptized as one of Jehovah's Witnesses." ECF 1 at 5; ECF 1-2 at 2. She began working as a Judiciary Clerk in May, 2017 at the District Court for Anne Arundel County, Maryland. ECF 1-2 at 2–3.

At some unspecified time, she alleges that "Supervision" moved her "to a position which stressed [her] out and [she] had a disability for mental stress." *Id.* at 4. This appears to refer to her cashier position in Glen Burnie. Plaintiff's later requests to move to a less stressful position, including a return to her previous position in Post Judgment, were denied. *Id.* A white woman who came from another court was placed in the Post Judgment position instead. *Id.* at 4–5. Each time Plaintiff requested to move from the cashier's position, other employees would be moved to new positions while her requests were denied. *Id.* at 5.

Although there were supposed to be two cashiers working at the Glen Burnie District Court, "Supervision" switched Plaintiff's co-worker to a different position, leaving Plaintiff as the sole cashier to check out between 50 to 90 court customers per day and increasing the stress of the position. *Id.* The supervisors did not allow Plaintiff's co-worker to tell Plaintiff before she was moved. *Id.* Between February 6, 2023, when other employees moved to different positions, and February 27, 2023, the Administrative Clerk would not speak to Plaintiff. *Id.* During that time period, on February 16, 2023, Plaintiff went to the Clerk's Office to give the "VitalChek for closeout" to the Division Chief or Supervisor of Court Operations. *Id.* Plaintiff found the supervisors in a meeting and, when she turned in the documentation, the Administrative Clerk

repeatedly said, "But it's only 3:00!" *Id.* at 6. For at least 4 years, the VitalCheks have been given to the supervisors at 3:00 p.m. *Id.*

On February 7, 2023, Jean C. Jacobs (Plaintiff's aunt, "Power of Attorney and EEOC representative") sent a complaint for discrimination to the Administrative Clerk and Division Chief, complaining of "ongoing harassment and discrimination occurring at [Plaintiff's] place of employment." *Id.* at 7.

Plaintiff had an ADA accommodation to work in a separate workspace due to mold and dust in the building. *Id.* at 6. At some unspecified time, supervisors removed Plaintiff from that workspace and installed her in the cashier's position handling money, simultaneously changing her work hours from 8:00–4:30 to 8:30–5:00, which prevented her from getting to her religious service some days. *Id.* In the cashier's job, Plaintiff also had to work late most days, despite having informed her supervisors when she applied that she needed to leave at 4:30 p.m. for religious services. *Id.* On March 15, 2023, when Plaintiff had to stay at work until 8:00 p.m., she called Jean C. Jacobs to let her know why she was still at work. *Id.* at 7. The Administrative Clerk overheard the conversation and said out loud, "I don't have time for this s---!" *Id.*

A white employee began working at the Glen Burnie District Court in late 2022. *Id.* at 6–7. After only two or three months, that employee asked the supervisors "to learn something new" and she was switched to the Domestic Violence department. *Id.* In contrast, Plaintiff's requests to switch roles were ignored. *Id.*

Plaintiff asked to take off of work on April 4 and 5, 2023, for a religious accommodation "for the Memorial of Christ's Death which is the most important day for Jehovah's Witnesses." *Id.* at 7. Her request was granted, but then she received letters of termination on April 5, 2023, and

April 14, 2023, stating that she had abandoned her job. *Id.* However, Jean C. Jacobs had kept in touch with Plaintiff's supervisor throughout that period. *Id.*

Plaintiff asserts claims of discrimination and retaliation based on her race, color, gender/sex, religion, and disability, citing Title VII and the Americans with Disabilities Act ("ADA"). ECF 1 at 5–6. She seeks various relief, including monetary damages and lifting of an "order" preventing her from working "at any State Court in all the State of Maryland under the Maryland Judiciary." *Id.* at 7.

## II. LEGAL STANDARDS

Defendant seeks dismissal pursuant to Rule 12(b)(6) or, in the alternative, summary judgment. ECF 16. The Rule 12(b)(6) standard presumes the facts alleged by a plaintiff to be true, then assesses whether the complaint still fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). But if a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, a complaint must allege "a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Plausibility requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

While this Court has discretion to consider the materials outside the pleadings that have been placed on the record by both sides and treat Defendant's motion as one for summary judgment

pursuant to Rule 12(d), it declines to do so. *See* Fed. R. Civ. P. 12(d). Given Plaintiff's self-represented status and the uncertainties regarding her theory of the claims, this motion is more fairly adjudicated under the motion to dismiss standard. This Court will therefore decline to consider any material other than the Complaint and its attachments in ruling on the pending motion as a motion to dismiss.

Because Plaintiff is self-represented, her pleadings are "liberally construed" and "held to less stringent standards than [those filed] by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "However, liberal construction does not absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd,* 584 F. App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, Civ. No. 10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."), *aff'd,* 526 F. App'x 255 (4th Cir. 2013).

Moreover, a federal court may not act as an advocate for a self-represented litigant. *See Brock v. Carroll*, 107 F.3d 241, 242–43 (4th Cir. 1997) (Luttig, J., concurring in judgment); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Therefore, the court cannot "conjure up questions never squarely presented," or fashion claims for a self-represented plaintiff. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985); *see also M.D. v. Sch. Bd. of Richmond*, 560 F. App'x 199, 203 n.4 (4th Cir. 2014) (rejecting a self-represented plaintiff's argument that the district court erred in failing to consider an Equal Protection claim, because the plaintiff failed to allege it in the complaint).

## III. ANALYSIS

### A. Eleventh Amendment Immunity

Defendant correctly asserts that the State of Maryland, as well as its agents and agencies, enjoys Eleventh Amendment immunity from ADA suits brought in federal court. *See* ECF 16-1 at 22–23. The Eleventh Amendment provides that a state, its agencies, and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Id.* (citing *Florida Dep't of Health v. Florida Nursing Home Ass'n*, 450 U.S. 147 (1981) (per curiam)). In *Board of Trustees of University of Alabama v. Garrett*, the Supreme Court determined that the Eleventh Amendment precluded an individual from suing a state for money damages in federal court under the ADA. 531 U.S. 356, 374 (2001)

In this case, Defendant, a state court, is a state agency. The State of Maryland is therefore the real party in interest. *See Edelman v. Jordan*, 415 U.S. 651, 662–65 (1974) (finding the state to be the real party in interest when its officials are sued and damages would be payable from the state treasury); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (finding no difference between a suit against the state itself and suit against a state officer in his official capacity). Because Plaintiff's ADA claims are, in essence, a suit against the State of Maryland, they are barred by the Eleventh Amendment and cannot proceed in federal court. Should Plaintiff wish to pursue monetary damages against Defendant on a theory of ADA disability discrimination or retaliation, those claims must be filed in state court.

**B. Discrimination/Hostile Work Environment (Harassment) Claims**

Plaintiff asserts that she was discriminated against based on her race, color, religion, and disability. To state a claim for status-based discrimination, a plaintiff may allege facts constituting direct evidence that her employer discriminated against her, *see Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004), or she may offer other plausible evidence contributing to a prima facie case of discrimination by showing that she is a member of a protected class, that she was meeting the reasonable expectations of her employer, that she suffered an adverse employment action, and that she was treated differently from similarly situated employees outside the protected class. *See Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30 (2012); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Notably, in *Swierkiewicz v. Sorema N.A.*, the Supreme Court held that "an employment discrimination plaintiff need not plead a prima facie case of discrimination...to survive [a] motion to dismiss," as requiring a plaintiff to do so would impose a "heightened pleading standard" at odds with the liberal pleading requirements mandated by Federal Rule of Civil Procedure 8(a)(2). 534 U.S. 506, 512, 515 (2002); *see* Fed. R. Civ. P. 8(a) ("A pleading that states a claim for relief must contain...a short and plain statement of the claim showing that the pleader is entitled to relief...[and] a demand for the relief sought.").

Following *Swierkiewicz*, the Court clarified that although a plaintiff is not required to plead facts to support each element of a prima facie claim for employment discrimination, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than...a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (holding that, on a motion to dismiss, courts are not "bound to accept as true a legal conclusion couched as a factual

allegation."). Thus, while Plaintiff is not required to plead facts to support a prima facie claim of discrimination, it must still be determined whether her Complaint comports with the "ordinary rules for assessing the sufficiency of a complaint," *see Swierkiewicz*, 534 U.S. at 511, by pleading sufficient facts to plausibly support a claim of discrimination.

Plaintiff has pleaded adverse employment actions, namely the failure to transfer her to other positions and her termination. *See* ECF 1 at 5. But she has failed to plead facts plausibly suggesting that she was treated differently than similarly situated employees because of her membership in some protected class. Plaintiff did assert that one particular position she wanted went to a white candidate, ECF 1-2 at 4, but she has not asserted sufficient facts comparing herself to that candidate for this Court to determine whether they are similarly situated employees. And she has not alleged any facts suggesting that other employees with similar attendance records were permitted to keep their positions while she was terminated. Absent such allegations or some other facts suggesting that her membership in a protected class was the basis for Defendant's decisions, Plaintiff has not stated a plausible discrimination claim of any sort.

Regarding Plaintiff's hostile work environment claims, a hostile work environment exists where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations and quotation marks omitted). To establish such a claim, "a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's [protected class]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Boyer-Liberto v.*

*Fontainebleau Corp*., 786 F.3d 264, 271 (4th Cir. 2015) (quoting *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011) (alteration and internal quotation marks omitted)).

Plaintiff has alleged that she experienced certain unwelcome conduct in the workplace, including that she was not permitted to transfer roles, ECF 1-2 at 5; that for a three-week period the Administrative Clerk stopped talking to her, *id.*; that at one meeting on February 16, 2023, the Administrative Clerk questioned the time at which she submitted the VitalChek, *id.* at 6; that the Administrative Clerk once said aloud, "I don't have time for this s---!," *id.* at 7; and that Plaintiff was sometimes required to work past 4:30 p.m., *id.* at 6. She has not, however, alleged facts establishing the requisite severe and pervasive conduct based on her status in any protected class. She has not alleged that any race, color, sex/gender, or religion-based comments were made to anyone at any time. She has not pleaded any other facts to plausibly suggest that the various conflicts with her supervisors or other job-related demands were based on her membership in a protected class.

Simple mistreatment, unfair decision-making, or rude conduct does not suffice to support a hostile work environment claim. *See E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008) ("[C]omplaints premised on nothing more than rude treatment by [coworkers], callous behavior by [one's] superiors, [or] a routine difference of opinion and personality conflict with [one's] supervisor" do not suffice.) (alterations in original) (internal citations and quotation marks omitted); *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (finding a workplace dispute and "some perhaps callous behavior by her superiors" insufficient for a plaintiff to establish severe or pervasive activity, even at the Rule 12(b)(6) stage); *Khoury v. Meserve*, 268 F. Supp. 2d 600, 614 (D. Md. 2003) (determining that "disrespectful, frustrating, critical, and unpleasant" workplace interactions do not create a hostile work environment). Absent

any facts suggesting some connection between her supervisors' conduct and her membership in some protected class, unpleasant workplace interactions and even unfair treatment cannot alone support a hostile work environment claim. Further, the allegations in Plaintiff's Complaint suggest isolated incidents occurring over a number of years, and not the type of severe and pervasive conduct that might constitute a hostile work environment, even had Plaintiff alleged some plausible connection to a protected class.

Therefore, Plaintiff's discrimination and hostile work environment claims are dismissed for failure to state a claim.

### C. Retaliation Claim

Plaintiff also alleges that she experienced retaliation. ECF 1 at 5. She asserts that her agent, Jean C. Jacobs, sent a letter alleging discrimination to the Administrative Clerk and the Division Chief on February 7, 2023, regarding "the ongoing harassment and discrimination occurring at [her] place of employment." ECF 1-2 at 7. This Court liberally construes that letter to be the protected activity meant to underlie the unspecified retaliation claim. But because the referenced letter was not attached to the Complaint and the Complaint does not specify the exact nature of the "harassment and discrimination" it alleged, this Court cannot determine whether Plaintiff's letter constitutes protected conduct under either Title VII or the ADA. Her claim must therefore be dismissed for failure to state a claim, absent more factual detail.

### D. Failure to Accommodate Claim

Although monetary relief cannot be sought in federal court for ADA claims, Plaintiff also seeks certain non-monetary relief, so this Court will consider the adequacy of her failure to accommodate claim. A prima facie case for failure to accommodate requires a plaintiff to show: "(1) that [she] was an individual who had a disability within the meaning of the statute; (2) that

the employer had notice of [her] disability; (3) that with reasonable accommodation [she] could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 579 (4th Cir. 2015) (alterations in original) (quoting *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (internal quotation marks omitted)). Plaintiff alleges that her repeated requests for transfer to another position constituted ADA accommodation requests because her job as cashier was too stressful in light of her mental disability. ECF 1-2 at 13. But she also asserts that her ADA accommodation "had since expired in September of 2021." *Id.* These contradictory factual assertions leave this Court unable to conclude that she specifically requested ADA accommodation for a mental health condition. Her ADA failure to accommodate claims, then, are independently subject to dismissal on that ground.

**E. Plaintiff's Motion for Appointment of Counsel**

With regard to Plaintiff's Motion to Appoint Pro Bono Counsel, the Court may request an attorney to represent any person proceeding in forma pauperis who is "unable to afford counsel." 28 U.S.C. § 1915(e)(1). In civil actions, however, the Court appoints counsel only in exceptional circumstances. *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). In doing so, the Court considers "the type and complexity of the case," whether the plaintiff has a colorable claim, and the plaintiff's ability to prosecute the claim. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984) (internal citations omitted), *abrogated on other grounds by Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296 (1989). Exceptional circumstances include a litigant who "is barely able to read and write," *id.* at 162, or clearly "has a colorable claim but lacks the capacity to present it," *Berry v. Gutierrez*, 587 F.Supp.2d 717, 723 (E.D. Va. 2008); *see also Altevogt v. Kirwan*, No. 11-1061, 2012 WL 135283, at *2 (D. Md. Jan. 13, 2012).

Inherent in this analysis is that one's indigence or inability to find pro bono counsel is insufficient to establish exceptional circumstances. Plaintiff's other proffered reasons do not show exceptional circumstances or a particular need that would require the immediate assistance of an attorney. Appointment of counsel is therefore not warranted at this time and the motion to appoint counsel is denied without prejudice. Should an amended complaint be filed containing a colorable claim, and should the case progress to discovery or a hearing, Plaintiff can renew her motion.

## IV. CONCLUSION

For these reasons, Plaintiff's Motion for Appointment of Counsel, ECF 3, will be denied and Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment, ECF 16, will be treated as a motion to dismiss and granted. This case will be closed, subject to reopening should Plaintiff, within thirty days, file a motion for leave to amend her complaint in accordance with this Court's Local Rules. Plaintiff is cautioned that, in any proposed amended complaint, she must attach any exhibits she wants this Court to consider and should include all of the facts relevant to each claim she asserts.

Dated: November 16, 2026

/s/
Stephanie A. Gallagher
United States District Judge